**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN BUS ASSOCIATION INDIVIDUALLY AND BY AND THROUGH ITS MEMBERS, ACADEMY EXPRESS LLC., ACADEMY LINES LLC., PANORAMA TOURS INC., PETER PAN BUS LINES, TRANS-BRIDGE LINES INC., ADIRONDACK TRANSIT LINES INC, HAMPTON JITNEY INC., LEPRECHAUN LINES INC., NIAGARA SCENIC TOURS, INC., BUS COMPANY HOLDINGS US LLC dba COACH USA, AND GREYHOUND LINES INC.<br>Plaintiffs,<br>v.<br><br>CITY OF NEW YORK and LISA F. GARCIA, in her official capacity as Commissioner of the New York City Department of Environmental Protection,<br><br>Defendants. | 26-CV-03903(LGS) |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

**STEVEN BANKS**
Corporation Counsel of the
City of New York
*Attorney for Defendant*
100 Church Street,
New York, New York 10007
Tel: (212) 356-2212

MICHELLE GOLDBERG-CAHN
MARK MUSCHENHEIM
GENAN F. ZILKHA
ISABELLA KENDRICK
Of Counsel,
August 19, 2026

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

FACTUAL ALLEGATIONS AND RELEVANT LAW ........ 2

ARGUMENT

I. STANDARD OF REVIEW ........ 4

II. THE EQUAL PROTECTION CLAIMS FAIL ........ 5

A. The Selective Enforcement Claim (First Claim) Fails ........ 5

1. Since Public Buses and Plaintiffs' Buses are Not Similarly Situated, Plaintiffs Fail the First Prong of Selective Enforcement ........ 6

2. Since the Differential Treatment Does not have an Impermissible Motive, has a Rational Basis, and Serves a Legitimate Government Objective, Plaintiffs Fail the Second Prong of Selective Enforcement ........ 7

B. The Class-Of-One Claim Fails (Tenth Claim) ........ 7

III. THE PROCEDURAL DUE PROCESS CLAIM FAILS ........ 9

IV. THE SUBSTANTIVE DUE PROCESS CLAIM (FOURTH CLAIM) FAILS ........ 13

V. DORMANT COMMERCE CLAUSE CLAIM FAILS ........ 14

1. The Idling Law clearly does not discriminate against interstate commerce. ........ 15

2. The Idling Law does not burden interstate commerce ........ 16

**Page**

VI. THE FEDERAL PREEMPTION CLAIM (SIXTH CLAIM) FAILS .......... 18

A. THERE is No Express Preemption .......... 19

B. There IS No Conflict Preemption .......... 20

VII. THE MONELL CLAIM (SEVENTH CLAIM) FAILS .......... 22

VIII. PLAINTIFFS ARE NOT ENTITLED TO A DECLARATORY JUDGMENT .......... 23

IX. PLAINTIFFS ARE NOT ENTITLED TO A PERMANENT INJUNCTION .......... 24

X. THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' ARTICLE 78 CLAIM (ELEVENTH CLAIM) .......... 25

CONCLUSION .......... 26

WORD COUNT CERTIFICATION .......... 27

# TABLE OF AUTHORITIES

**Cases** **Pages**

All. of Auto. Mfrs., Inc. v. Currey,
610 F. App'x 10 (2d Cir. 2015) ....15

Altria Grp., Inc. v. Good,
555 U.S. 70 (2008)....19

Arizona v. United States,
567 U.S. 387 (2012)....19, 20

Ashcroft v. Iqbal,
556 U.S. 662 (2009)....4

Barnes v. Glen Theatre, Inc.,
501 U.S. 560 (1991)....20

BD v. DeBuono,
130 F. Supp. 2d 401 (S.D.N.Y. 2001)....22

Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.,
2014 W.L. 4054240 (S.D.N.Y. Aug. 15, 2014)....24

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)....4

Bizzarro v. Miranda,
394 F.3d 82 (2d Cir. 2005)....5

Brass v. Am. Film Techs., Inc.,
987 F.2d 142 (2d Cir. 1993)....5

Brown v. Tomcat Elec. Sec., Inc.,
2007 W.L. 2461823 (E.D.N.Y. Aug. 27, 2007)....25

Buono v. Tyco Fire Prods., LP,
78 F.4th 490 (2d Cir. 2023) ....19

C.f. United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.,
550 U.S. 330 (2007)....6, 15

Cartier v. Symbolix, Inc.,
454 F. Supp. 2d 175 (S.D.N.Y. 2006)....24

Cloister E., Inc. v. N.Y. State Liquor Auth.,
483 F. Supp. 3d 221 (S.D.N.Y. 2020)....12

**Cases** **Pages**

Clubside, Inc. v. Valentin,
468 F.3d 144 (2d Cir. 2006)....8

Coal. for Competitive Elec. v. Zibelman,
906 F.3d 41 (2d Cir. 2018)....18

Cohen Milstein Sellers & Toll PLLC v. Severstal Wheeling, Inc. Ret. Comm.,
2026 W.L. 660724 (S.D.N.Y. Mar. 9, 2026)....23

Cotto v. City of New York,
803 Fed. Appx. 500 (2d Cir. 2020)....22

Crosby v. Nat'l Foreign Trade Council,
530 U.S. 363 (2000)....21

Cullen v. Mello,
2024 W.L. 1904571 (2d Cir. May 1, 2024)....12

Dittmer v. Cty. of Suffolk,
59 F. App'x 375 (2d Cir. 2003)....14

Doe v. Franklin Square Union Free Sch. Dist.,
568 F. Supp. 3d 270 (E.D.N.Y. 2021)....20

Dow Jones & Co. v. Harrods Ltd.,
346 F3d 357 (2d Cir. 2003)....23

Dwares v. City of New York,
985 F.2d 94 (2d Cir. 1993)....22

Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,
458 U.S. 141 (1982)....19

General Motors Corp. v. Tracy,
519 U.S. 278 (1997)....15

Goldstein v. California,
412 U.S. 546 (1973)....21, 22

Grandon v. Merrill Lynch & Co.,
147 F.3d 184 (2d Cir. 1988)....4

Gucci Am., Inc. v. Duty Free Apparel, Ltd.,
286 F. Supp. 2d 284 (S.D.N.Y. 2003)....24

**Cases** **Pages**

Harlen Assocs. v. Inc. Vill. of Mineola,
273 F.3d 494 (2d Cir. 2001)....7

Harris v. Mills,
572 F.3d 66 (2d Cir. 2009)....5

Henry-Lee v. City of N.Y.,
746 F. Supp. 2d 546 (S.D.N.Y. 2010)....22

iGem Communications LLC v. MAG DS Corp.,
2024 W.L. 5155839 (S.D.N.Y. Dec. 18, 2024)....24

Interboro Inst., Inc. v. Foley,
985 F.2d 90 (2d Cir. 1993)....9, 10

Jackson-Mau v. Walgreen Co.,
652 F. Supp. 3d 349 (E.D.N.Y. 2023), aff'd, 115 F.4th 121 (2d Cir. 2024)....19

Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts, Appellate Div. of the Supreme Court of the State of N.Y.,
118 F. Supp. 3d 554 (S.D.N.Y. 2015),
aff'd 852 F.3d 178 (2d Cir. 2017)....16

In re Joint E. & S. Dist. Asbestos Litig.,
14 F.3d 726 (2d Cir. 1993)....23

Kaluczky v. City of White Plains,
57 F.3d 202 (2d Cir. 1995)....14

Killoran v. Westhampton Beach Sch. Dist.,
2023 W.L. 4503274 (2d Cir. July 13, 2023)....7

KM Enters. v. McDonald,
2012 W.L. 4472010 (E.D.N.Y. Sep. 25, 2012)....23

Komatsu v. City of N.Y.,
2021 W.L. 3038498 (S.D.N.Y. July 16, 2021)....25

Lawtone-Bowles v. City of N.Y.,
2021 W.L. 3773641 (S.D.N.Y. Aug. 23, 2021)....25

Liberian Cmty. Ass'n of Conn. v. Lamont,
970 F.3d 174 (2d Cir. 2020)....12

Mathews v. Eldridge,
424 U.S. 319 (1976)....12

**Cases** **Pages**

Matzell v. Annucci,
64 F.4th 425 (2d Cir. 2023) ....................14

MSR Tr. v. Nationstar Mortg. LLC,
2022 W.L. 3441613 (S.D.N.Y. July 28, 2022) ....................24

Murphy v. NCAA,
584 U.S. 453 (2018)....................19

Myers Indus. v. Schoeller Arca Sys., Inc.,
171 F. Supp. 3d 107 (S.D.N.Y. 2016)....................23

N.Y. Pet Welfare Ass'n v. City of N.Y.,
850 F.3d 79 (2d Cir. 2017),
cert. denied 583 U.S. 824 (2017) ....................17, 18, 21

N.Y. SMSA Ltd. P'ship v. Town of Clarkson,
612 F.3d 97 (2d Cir. 2010)....................19, 20

Nat'l Shooting Sports Found., Inc. v. James,
144 F.4th 98 (2d Cir. 2025) ....................17

Nestle Waters N. Am., Inc. v. City of N.Y.,
2016 W.L. 3080722 (S.D.N.Y. May 25, 2016), aff'd, 689 F. App'x 87 (2d Cir.
2017) ....................10

Newport v. Fact Concerts,
453 U.S. 247 (1981)....................25

Omya, Inc. v. Vermont,
33 F. App'x 581 (2d Cir. 2002) ....................20

Oneida Indian Nation v. Madison Cty.,
665 F.3d 408 (2d Cir. 2011)....................11

Perez v. Metro. Transp. Auth.,
2012 W.L. 1943943 (S.D.N.Y. May 25, 2012) ....................22

Pike v. Bruce Church,
397 U.S. 137 (1970)....................16

Pistolesi v. Calabrese,
666 F. App'x 55 (2d Cir. 2016)....................8

Progressive Credit Union v. City of N.Y.,
889 F.3d 40 (2d Cir. 2018)....................8

**Cases** **Pages**

Rackley v. City of N.Y.,
186 F. Supp. 2d 466 (S.D.N.Y. 2002)....9

Rest. L. Ctr. v. City of N.Y.,
90 F.4th 101 (2d Cir. 2024)....14

Rivera-Powell v. N.Y. City Bd. of Elections,
470 F.3d 458 (2d Cir. 2006)....9

Sbarra v. Port Auth.,
2011 W.L. 4344078 (S.D.N.Y. Sep. 9, 2011)....9

Segal v. City of N.Y.,
459 F.3d 207 (2d Cir. 2006)....23

Selevan v. N.Y. Thruway Auth.,
584 F.3d 82 (2d Cir. 2009)....15

Southerland v. City of N.Y.,
680 F.3d 127 (2d Cir. 2011)....14

Spectre Air Capital, LLC v. WWTAI AirOpCo II DAC,
737 F. Supp. 3d 195 (S.D.N.Y. 2024)....24

Spinelli v. City of N.Y.,
579 F.3d 160 (2d Cir. 2009)....12

Town of Southold v. Town of E. Hampton,
477 F.3d 38 (2d Cir. 2007)....16

Travis v. Navient Corp.,
460 F. Supp. 3d 269 (E.D.N.Y. 2020)....19

Union Square Supply Inc. v. De Blasio,
572 F. Supp. 3d 15 (S.D.N.Y. 2021)....12

United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.,
438 F.3d 150 (2d Cir. 2006),
aff'd 550 U.S. 330 (2007)....17

Wachovia Bank, N.A. v. Burke,
414 F.3d 305 (2d Cir. 2005)....19

Wright v. Manetta,
2016 W.L. 482973 (S.D.N.Y. Feb. 5, 2016)....5

**Cases** **Pages**

Wurtz v. Rawlings Co., LLC,
761 F.3d 232 (2d Cir. 2014)....................19

Wyeth v. Levine,
555 U.S. 555 (2009)....................18, 20

Zahra v. Town of Southold,
48 F.3d 674 (2d Cir. 1995)....................5, 6, 22

Zheng Dong v. City Univ. of N.Y.,
2026 W.L. 1399155 (S.D.N.Y. May 19, 2026) ....................5

**Statutes**

49 C.F.R. § 396.11 ....................21

49 C.F.R. § 396.13 ....................21

49 C.F.R. § 570.57 ....................22

48 RCNY § 6-07(a)....................10

48 RCNY § 6-11 ....................13

48 RCNY § 6-12 ....................13

48 RCNY § 6-12(a)....................4

48 RCNY § 6-12(b) ....................3, 10

48 RCNY § 6-13(a)....................13

48 RCNY § 6-13(b) ....................3, 9

48 RCNY § 6-15 ....................9

48 RCNY § 6-17(a)....................4

48 RCNY § 6-19(a)....................4

48 RCNY § 6-19(g)(1)....................4

48 RCNY § 6-19(g)(2)....................4

28 U.S.C. § 2201(a) ....................23

42 U.S.C. § 1983....................9, 22

**Statutes** **Pages**

49 U.S.C. § 14501 ........ 20

49 U.S.C. § 14501(c) ........ 20

Fed. R. Civ. P. 12(b)(1) ........ 1, 24

Fed. R. Civ. P. 12(b)(6) ........ 1, 4, 24

N.Y.C. Admin. Code § 24-163 ........ 1, 2

N.Y.C. Admin. Code § 24-163(a) ........ 1, 2

N.Y.C. Admin. Code § 24-182(a) ........ 1, 2

N.Y.C. Admin. Code § 24-182(d) ........ 3

N.Y. Pub. Auth. Law § 1264(2) ........ 6

N.Y. Pub. Auth. Law § 1402(2) ........ 6

Defendants CITY OF NEW YORK ("City") and LISA F. GARCIA, in her official capacity as Commissioner of the New York City Department of Environmental Protection ("DEP") (collectively, "Defendants"), by their attorney, Steven Banks, Corporation Counsel of the City of New York, submit this memorandum of law in support of Defendants' motion to dismiss the Complaint ("Cmpl.") (ECF 11) pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs, a trade association and ten bus companies, brought this action challenging sections 24-163 and 24-182(a) (collectively "Idling Law") of the Administrative Code of the City of New York ("Admin. Code"). Admin. Code § 24-163(a) penalizes vehicle idling for more than three minutes; Admin. Code § 24-182(a) empowers members of the public ("Citizen Reporters") to report bus and truck idling to DEP in exchange for a portion of any penalty collected following a hearing at the New York City Office of Administrative Trials and Hearings ("OATH").

Plaintiffs assert a variety of claims that challenge the Idling Laws; they all fail. To start, Plaintiffs allege that the Idling Law violates equal protection because penalties are not currently imposed against vehicles operated by government agencies ("Public Buses"). This claim fails because Plaintiffs' buses and Public Buses are not "prima facie identical" and because there is no impermissible motive for any alleged differing treatment. The procedural due process claim fails because there are comprehensive procedures for challenging summonses issued under Admin. Code § 24-163(a) ("Idling Summonses") at OATH. The Complaint also fails to state a claim for a violation of substantive due process because there is nothing egregious or outrageous about issuing Idling Summonses to decrease unnecessary vehicle idling. The dormant Commerce Clause claim fails because there is no discrimination against interstate commerce in favor of intrastate

commerce. The Complaint also fails to state a claim for federal preemption because no federal law expressly preempts the Idling Law and because the Idling Law does not conflict with any federal law or regulation. The Monell claim fails without an underlying constitutional violation. Further, Plaintiffs' declaratory judgment claim fails because this claim is duplicative of the other Constitutional claims. The permanent injunction claim also fails because a permanent injunction is a remedy and not an independent cause of action, and because Plaintiffs have demonstrated neither actual success on the merits of this action nor irreparable harm. Finally, this Court should not exercise jurisdiction to hear Plaintiffs' claims under Article 78 of the New York Civil Practice Law and Rules ("CPLR") because the New York State Supreme Court exercises exclusive jurisdiction over Article 78 claims. Thus, this Court should dismiss this action in its entirety.

## FACTUAL ALLEGATIONS AND RELEVANT LAW

Plaintiffs are a trade association and ten bus companies. Cmpl ¶¶ 16, 17. From 2019 until 2026 two of the plaintiffs received 1,737 Idling Summonses See Cmpl, Exhibit 3. Admin. Code § 24-163(a) penalizes vehicle idling for more than three minutes "unless the engine is used to operate a loading, unloading or processing device." Where the outside temperature exceeds 40 degrees Fahrenheit, a bus may not idle "while parking, standing, or stopping…at any terminal point, whether or not enclosed, along an established route." Id.

Many Idling Summonses are based on complaints made by Citizen Reporters. Under Admin. Code § 24-182(a), a Citizen Reporter "may serve upon [DEP] a complaint [("Citizen Complaint")]… alleging that [a bus] has violated [Admin. Code § 24-163] …together with evidence of such violation." Evidence includes, inter alia, a time-stamped video that captures

the idling and identifying information including the bus's license plate and company name.[1] The Citizen Complaint and evidence (collectively "idling submission") is submitted to DEP through DEP's Idling Complaint System.[2] "Idling submissions are reviewed by at least two reviewers, including a supervisor, before a decision is made."[3] If DEP accepts the idling submission, DEP will issue and serve an Idling Summons on the vehicle owner. Each Idling Summons identifies the date and time upon which it will be heard at OATH. Once DEP issues the Idling Summons, the Citizen Reporter "will be informed of the summons number and hearing date [and] may need to be available in person or by phone to testify."[4] If the Idling Summons is sustained, the Citizen Reporter is awarded "out of the proceeds collected, [25%] of such proceeds….." Admin. Code § 24-182(d).[5]

OATH hearings are governed by the procedures in Subchapter C of Chapter 6 of Title 48 of the Rules of the City of New York ("RCNY"). A summons "sworn to under oath or affirmed under penalty of perjury…will be admitted as prima facie evidence of the facts stated therein." 48 RCNY § 6-12(b). The OATH Hearing Officer ("HO") may, "[u]pon request of a party, issue subpoenas or adjourn a hearing for the appearance of individuals or the production of documents or other types of information when the [HO] determines that necessary and material evidence will result[.]" Id. § 6-13(b). DEP has the burden of proving the factual allegations contained in the summons by a preponderance of the evidence. The party named in the summons

---

[1] See Citizens Air Complaint Program, *available at* https://www.nyc.gov/site/dep/environment/idling-citizens-air-complaint-program.page (last visited Aug. 12, 2026)

[2] Id.

[3] Id.

[4] Id.

[5] In certain circumstances Citizen Reporters may serve and prosecute Idling Summonses themselves and are "award[ed], out of the proceeds collected, [50%] of any civil penalty…." Admin. Code § 24-182(e).

(referred to as the "respondent") has the burden of proving an affirmative defense, if any, by a preponderance of the evidence. See id. § 6-12(a).

After the hearing, the HO will "write a decision sustaining or dismissing each charge in the summons…Where a violation is sustained, the [HO] will impose the applicable penalty…." Id. § 6-17(a). Penalties for idling violations range from $350 for a first violation to $600 for a third violation; default penalties range from $1,000 to $2,000. See 15 RCNY § 43-02. The HO's decision can be appealed to the OATH Appeals Division ("OAD"). See 48 RCNY § 6-19(a). The OAD will "determine whether the facts contained in the findings of the [HO] are supported by a preponderance of the evidence in the record, and whether the determinations of the [HO], as well as the penalties imposed, are supported by law." Id. § 6-19(g)(1). The OAD will "issue a written decision. Such decision is the final [OATH] determination…and judicial review of such decision may be sought pursuant to Article 78 of the [CPLR]…." Id. § 6-19(g)(2). Any decision rendered following an Article 78 proceeding may be appealed as of right to the relevant New York State Appellate Division.

## ARGUMENT

### I. STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts facts alleged in the complaint as true and construes all reasonable inferences in the nonmoving party's favor. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1988). A complaint must nevertheless "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Further "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)(citations omitted). On a motion to dismiss, "consideration is limited to the factual allegations in plaintiffs' amended complaint…to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)

## II. THE EQUAL PROTECTION CLAIMS FAIL

### A. The Selective Enforcement Claim (First Claim) Fails

A selective enforcement equal protection claim requires that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). "[I]ndividuals are similarly situated for purposes of selective enforcement claims when they are 'similarly situated in all material respects.'" Wright v. Manetta, 2016 W.L. 482973, at *3 (S.D.N.Y. Feb. 5, 2016)(citations omitted). "To adequately allege the second element of a selective enforcement claim, a plaintiff must allege 'that the governmental actor was motivated by reasons wholly unrelated to any legitimate [government] objective, a burden few are able to carry.'" Zheng Dong v. City Univ. of N.Y., 2026 W.L. 1399155, at *9 (S.D.N.Y. May 19, 2026)(citations omitted). A selective enforcement "claim requires proof of disparate treatment and impermissible motivation…plaintiffs must prove that the disparate treatment was *caused by* the impermissible motivation. They cannot merely rest on a showing of disparate treatment." Bizzarro v. Miranda, 394 F.3d 82, 87 (2d Cir. 2005)(emphasis in original). "[E]qual protection

does not require that all evils of the same genus be eradicated or none at all." Zahra, 48 F.3d at 684 (citations omitted).

Plaintiffs allege that their buses received Idling Summonses but Public Buses do not (Cmpl ¶¶ 94, 95), and this alleged differing treatment is "without a rational basis" (Cmpl ¶ 94) or is motivated by "favoritism, protectionism, revenue-generating incentives, hostility toward private interstate carriers, or a desire to confer regulatory and economic advantages on publicly owned or preferred fleets." Cmpl ¶ 95.

1. *Since Public Buses and Plaintiffs' Buses are Not Similarly Situated, Plaintiffs Fail the First Prong of Selective Enforcement*

Plaintiffs' buses and Public Buses are not similarly situated in "all material respects," and thus the selective enforcement claim fails at the outset. Any similarity between Plaintiffs' buses and Public Buses is, at best, superficial. While both operate "combustion-engine" buses (Cmpl ¶ 32), "use the same streets and curb space, [and] engage in substantially similar loading, unloading, staging, and stop-related conduct," (Cmpl ¶ 89), and may produce similar emissions, the similarities end there. Plaintiffs' buses are owned by private companies. Plaintiffs determine their appearances. Plaintiffs' employees are private employees. On the other hand, Public Buses are not privately owned; they exist for the "benefit of the people of the state of New York" and perform a "governmental function." New York State Public Authorities Law §§ 1264(2) and 1402(2). Their employees are public servants. C.f. United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth., 550 U.S. 330, 342 (2007)(Noting that, in the context of the dormant Commerce Clause, "[s]tates and municipalities are not private businesses--far from it. Unlike private enterprise, government is vested with the responsibility of protecting the health, safety, and welfare of its citizens.").

2. *Since any Differential Treatment Does not have an Impermissible Motive, has a Rational Basis, and Serves a Legitimate Government Objective, Plaintiffs Fail the Second Prong of Selective Enforcement*

Plaintiffs cannot establish the second prong of selective enforcement, an impermissible motivation. Differing treatment based on "economic protectionism" is permissible under the Equal Protection Clause so long as such treatment is not done in bad faith or with an intent to injure – neither of which are present here. See Cmpl ¶ 95.[6] Plaintiffs allege that differential seeks to provide an economic advantage to Public Buses – not to injure Plaintiffs. And any alleged discrimination under the Idling Law cannot be motivated by "hostility toward private interstate carriers" (id.) where the Idling Law applies to all privately owned vehicles no matter whether they travel exclusively in New York or interstate.

Finally, there is a legitimate government objective and rational basis for any different treatment between Plaintiffs' buses and Public Buses; preserving resources and protecting taxpayer funds. The use of City funds to prosecute Idling Summonses issued against Public Buses, where, at best, a portion of any penalty would be returned to the City, is a poor use of public, taxpayer, resources.

**B. The Class-Of-One Claim Fails (Tenth Claim)**

A "class-of-one equal protection claim is one in which the 'plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Killoran v. Westhampton Beach Sch. Dist., 2023 W.L. 4503274, at *2 (2d Cir. July 13, 2023)(quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d

[6] Further, MTA has a policy that prohibits unnecessary idling and makes the "[f]ailure to comply with [the policy] grounds for disciplinary action." See May 10, 2024 MTA Vehicles Engine Idling & Emissions Control Policy, *available at* https://twu106.org/wp-content/uploads/2025/02/Emission-Bulletin-2024.pdf (last visited Aug. 18, 2026).

494, 499 (2d Cir. 2001)). A plaintiff "is required to identify comparators that are 'prima facie identical' in order to 'provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose . . . is all but certain.'" Pistolesi v. Calabrese, 666 F. App'x 55, 58 n.2 (2d Cir. 2016)(citations omitted)."[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006).

First, there is a rational basis for any differential treatment between Plaintiffs' buses and Public Buses. See Point I.A.2, supra.

Second, while there are some similarities between Plaintiffs' buses and Public Buses (see Cmpl ¶ 89), they are not prima facie identical. See Point I.A.1, supra. Progressive Credit Union v. City of N.Y., 889 F.3d 40 (2d Cir. 2018) is illustrative here. The Court in Progressive addressed whether "New York City's regulatory regime for the for-hire ground transportation industry violates the United States Constitution by subjecting yellow medallion taxicabs to different regulatory requirements than those imposed upon 'for-hire vehicles' [('FHV')]…like Uber and Lyft." Id. at 44. The Court affirmed dismissal of a class-of-one equal protection claim because FHVs and yellow taxis were not prima facie identical. Taxis were "the only vehicles that are permitted to pick up a passenger who hails a taxicab on the street," while "FHVs are by law, not permitted to serve these street-hail customers…customers that medallion taxicabs are required to accept." Id. at 50. Public Buses and Plaintiffs' buses are also dissimilar as discussed above; Plaintiffs' employees are not public employees while Public Bus employees are public servants. Plaintiffs' buses are owned by private entities while Public Buses are owned by the governmental agencies.

## III. THE PROCEDURAL DUE PROCESS CLAIM FAILS

The Complaint challenges the Idling Law as violating procedural due process because of the mechanisms for defending against Idling Summonses at OATH (Second Claim) and because of delays between the Idling violation and the service of the Idling Summons (Third Claim). Both claims fail.

A procedural due process claim requires deprivation "by state action of a property right…without being afforded due process of law." Sbarra v. Port Auth., 2011 W.L. 4344078 , at *10 (S.D.N.Y. Sep. 9, 2011). "[T]he availability of adequate pre-deprivation and post-deprivation remedies under state law will defeat a § 1983 action brought against state actors--so long as the claimant had sufficient notice of such remedies…." Rackley v. City of N.Y., 186 F. Supp. 2d 466, 481 (S.D.N.Y. 2002)."Where a state law remedy gives a party 'a meaningful opportunity to challenge' the state's action, 'he [is] not deprived of due process simply because he failed to avail himself of the opportunity.'" Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 467, n 9 (2d Cir. 2006)(citations omitted).

First, due process does not require that the City provide comprehensive pre-deprivation procedures or full-blown hearings. See Interboro Inst., Inc. v. Foley, 985 F.2d 90, 94 (2d Cir. 1993)("[N]o further pre-deprivation hearing was required where the written submissions were accepted and reviewed at each stage of the evaluation process and a post-deprivation full evidentiary hearing was available under [CPLR] Article 78."). In any event, there are copious opportunities at OATH for Plaintiffs to challenge Idling Summonses. For example, Plaintiffs can request the video that formed the basis of the Citizen Complaint (48 RCNY § 6-13(b)) and critique it, can request that the hearing be adjourned and an application can be made to cross-examine the issuing officer (id. § 6-15), can request that the Citizen Reporter be subpoenaed (id. § 6-13(b)), and can raise issues – such as the inability to "investigate the allegations, identify the driver, locate

potential witnesses, and reconstruct the circumstances that may have led to the alleged idling" and "preserve or retrieve contemporaneous exculpatory evidence, including electronic data, dispatch records, internal video, and witness recollections." Cmpl ¶¶ 113, 120. Further, Plaintiffs can cross-examine witnesses if they offer "proof showing that cross-examination could materially affect the outcome of the case" (Cmpl ¶ 108) - something Plaintiffs have not alleged to have done. If there are concerns about credibility of the "citizen-submitted video" and any "operational context" (Cmpl ¶¶ 104, 145), Plaintiffs can also seek to cross-examine the issuing officer who vetted the idling submission. And while the information that can be requested in pre-hearing discovery is limited to "a list of the names of witnesses who may be called and copies of documents intended to be submitted into evidence" (48 RCNY § 6-07(a)), "other applications or motions for discovery shall be made… and the [HO] may order such further discovery as is deemed appropriate in his or her discretion." Id. And there is nothing violative of due process about the fact that an Idling Summons is admitted as "prima facie evidence" (Cmpl ¶ 109) "of the facts stated therein" if sworn to under oath (48 RCNY § 6-12(b) as due process only dictates that Plaintiffs receive a notice and opportunity to be heard. Interboro Inst., Inc., 985 F.2d at 93. Finally, an adverse decision at OATH can be challenged as of right at the OATH Appeals Division, in an Article 78 proceeding, and at the Appellate Division.

Therefore, Plaintiffs are provided with pre-and post-deprivation process. Pre-deprivation process is provided at OATH before any penalty is imposed and post-deprivation process is provided after a penalty is paid through administrative appeals to the OAD, in Article 78 proceedings, and in appeals to the Appellate Division. These serve as an opportunity as of right to challenge an Idling Summons and satisfy due process. See Nestle Waters N. Am., Inc. v. City of N.Y., 2016 W.L. 3080722, at *8 (S.D.N.Y. May 25, 2016), aff'd, 689 F. App'x 87 (2d Cir. 2017)

("There is no material factual dispute that the City's administrative parking violations system, together with the judicial system of the State of New York, provided plaintiff with adequate pre-deprivation remedies, adequate post-deprivation remedies, and sufficient notice that such remedies were available.")(citations omitted).

Plaintiffs also assert a due process violation because they receive Idling Summonses six months to a year after the violation occurs. Cmpl ¶¶ 132, 133. Delay alone does not violate due process. See Oneida Indian Nation v. Madison Cty., 665 F.3d 408, 434 (2d Cir. 2011)("[W]e do not regard as persuasive an interpretation of the Due Process Clause that would impose a rigid requirement as to the precise timing with which notice must be given."). Although Plaintiffs claim they are "prejudiced" by the delay in receiving summonses, (Cmpl ¶¶ 112, 113, 115-117), nothing prevents Plaintiffs from raising at OATH the inability to "investigate the allegations, identify the driver, locate potential witnesses, and reconstruct the circumstances" (Cmpl ¶ 113) surrounding the idling violation.

Further, nothing prevents Plaintiffs from implementing retention policies to "preserve or retrieve contemporaneous exculpatory evidence, including electronic data, dispatch records, internal video, and witness recollections" (id.) or to prevent "telematics, GPS, engine, and related vehicle data" from being overwritten. Cmpl ¶ 120. And while federal "regulations require motor carriers to retain records of duty status and support documents for six months" (Cmpl ¶ 119; 135-137), Plaintiffs can retain records for longer than and ensure that "GPS and engine diagnostic data [is not overwritten] every 30 days" as such information could be a defense to an Idling Summons. Cmpl ¶ 136.

Finally, under the factors set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), the process available to challenge Idling Summonses is sufficient and the delay in serving Idling

Summonses does not violate due process. Under the Mathews Factors, "[I]n determining how much process is due, a court must weigh (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards, and (3) the government's interest." Cullen v. Mello, 2024 W.L. 1904571, at *2 (2d Cir. May 1, 2024)(quoting Spinelli v. City of N.Y., 579 F.3d 160, 170 (2d Cir. 2009)). Since analysis under the Mathews Factors "entails balancing multiple factors, procedural due process, 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' Rather, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" Liberian Cmty. Ass'n of Conn. v. Lamont, 970 F.3d 174, 191 (2d Cir. 2020)(citations omitted).

The first Mathews Factor, the private interest affected, weighs against Plaintiffs. The interest at issue here –penalties ranging in $350 to $600, is not entitled to significant weight. Significant weight is generally given to non-monetary interests such as a restaurant's liquor license (Cloister E., Inc. v. N.Y. State Liquor Auth., 483 F. Supp. 3d 221, 233 (S.D.N.Y. 2020) or business merchandise. See Spinelli, 579 F.3d at 171 ("Without firearms to sell, Spinelli could not do business as a gun dealer at all, whether or not she had a dealer license.").

The second Mathews factor, risk of an erroneous deprivation, also weighs against a finding of a due process violation. "Before a penalty is imposed…entities are entitled to a pre-deprivation hearing before an OATH [HO], and penalties imposed under the Rule may be challenged in [an] Article 78 [proceeding]. The Second Circuit has held that analogous administrative schemes satisfy due process." Union Square Supply Inc. v. De Blasio, 572 F. Supp. 3d 15, 24 (S.D.N.Y. 2021). Plaintiffs allege that the risk of erroneous deprivation is "heightened by Defendants' ownership-based public/private carveout, bounty-driven complaint incentives, and

service delays that impede access to exculpatory evidence before Plaintiffs receive notice." Cmpl ¶ 125; see, also, Cmpl ¶¶ 134-136, 138, 141-143, 145-148. Yet Plaintiffs do not explain why the multiple levels of process that follow (at the OAD, in an Article 78 proceeding, and at the Appellate Division) do not supply the requisite process owed to Plaintiffs. Plaintiffs also incorrectly allege that "[b]y the time a plaintiff reaches a forum that can hear constitutional arguments…the property (the fine money) has already been seized, or the 'record' from OATH is compromised because federal safety defenses are excluded." Cmpl ¶ 128. While Plaintiffs are required to pay any penalties if an Idling Summons is sustained, those penalties are returned if they subsequently prevail. And nothing prevents Plaintiffs from raising any "federal safety defenses" or a "compromised" record, at OATH or implementing expanded retention policies, that would allow Plaintiffs' to perhaps more effectively defend Idling Summonses to avoid alleged prejudice. Cmpl ¶ 138.

The third Mathews factor, the Government's interest, clearly weighs in Defendants' favor. Defendants provide procedural safeguards. See, e.g., 48 RCNY §§ 6-11, 6-12. While OATH does not require that Citizen Reporters be present, Citizen Reporters are required to be available during hearings and HOs may subpoena them to appear at hearings under 48 RCNY § 6-13(a). And if Plaintiffs believe that the delays "undermine the accuracy, reliability, and fairness of the adjudication process" before OATH (Cmpl ¶ 146) nothing prevents Plaintiffs from raising these concerns at OATH, or in an Article 78 proceeding after receiving adverse decisions from the OAD.

## IV. THE SUBSTANTIVE DUE PROCESS CLAIM (FOURTH CLAIM) FAILS

"Substantive due process rights safeguard persons 'against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" Southerland v. City of N.Y., 680 F.3d 127, 151 (2d Cir. 2011)(cleaned up). This is a

"deferential standard [and] plaintiffs' due process claim will fail if the Act is rationally related to any legitimate state interest." Dittmer v. Cty. of Suffolk, 59 F. App'x 375, 378 (2d Cir. 2003).

A substantive due process claim requires a two-step analysis. "The first step in substantive due process analysis is to identify the constitutional right at stake." Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995). The second step is to "demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Matzell v. Annucci, 64 F.4th 425, 436 (2d Cir. 2023). The "interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Southerland, 680 F.3d at 131.

The Idling Law's enforcement structure is not egregious or outrageous so as to shock the contemporary conscience. First, that the Idling Law is generally not enforced against "public fleets" does not mean that the Idling Law's goal is not about "clean air" or only about "generating revenue." Cmpl ¶ 160. Second, there is nothing egregious or outrageous about a law that issues summonses to entities that cause environmental harms – even if the law does not remove all environmental harms; especially where there are copious mechanisms in place that allow these summonses to be challenged administratively and judicially.

## V. DORMANT COMMERCE CLAUSE CLAIM FAILS

Nothing about the Idling Law either burdens or discriminates against interstate commerce. See Cmpl ¶¶ 162-186 (Fifth Claim). "The dormant Commerce Clause acts as a constitutional safeguard against economic protectionism, subjecting regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors to heightened scrutiny." Rest. L. Ctr. v. City of N.Y., 90 F.4th 101, 106 (2d Cir. 2024). "[L]egislation runs afoul of the [dormant Commerce Clause] only where it: '(1) clearly discriminates against interstate

commerce in favor of intrastate commerce, (2) imposes a burden on interstate commerce incommensurate with the local benefits secured, or (3) has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question.'" All. of Auto. Mfrs., Inc. v. Currey, 610 F. App'x 10, 12 (2d Cir. 2015)(quoting Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 90 (2d Cir. 2009)).

1. *The Idling Law clearly does not discriminate against interstate commerce.*

Plaintiffs allege, inter alia, that the Idling Law "favors public or locally affiliated transportation providers over private interstate carriers" (Cmpl ¶ 171), that the Idling Law "confers a relative economic advantage on publicly owned or favored fleets by shielding them from comparable OATH monetary penalties" (Cmpl ¶ 180); and "discriminates between private interstate carriers and public or locally protected fleets." Cmpl ¶ 184. For the purposes of the dormant Commerce Clause, differing treatment between a private company and a government entity is not discrimination.

Government agencies, unlike private companies are "vested with the responsibility of protecting the health, safety, and welfare of its citizens [and are set] apart from a typical private business." United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth., 550 U.S. 330, 342-3 (2007); see General Motors Corp. v. Tracy, 519 U.S. 278, 313 (1997)("[I]ts argument is based on a novel premise: that private marketers engaged in the sale of natural gas are similarly situated to public utility companies. Nothing in this Court's negative Commerce Clause jurisprudence compels that conclusion.")(Scalia, J., concurring).

Plaintiff are private bus companies. See Cmpl ¶¶ 17, 37. Public Buses are government owned and operated. Cmpl ¶ 32. Therefore, they are not similarly situated and there is no discrimination under the dormant Commerce Clause.[7]

2. *The Idling Law does not burden interstate commerce*

Turning to the second prong, there is no burden on interstate commence because the Idling Law "treat[s] in-state and out-of-state interests identically. [It does] not have a 'disparate impact on any non-local commercial entity;' rather, [it] treat[s] all commercial entities equally, without regard to in-state or out-of-state status." Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts, Appellate Div. of the Supreme Court of the State of N.Y., 118 F. Supp. 3d 554, 577 (S.D.N.Y. 2015), aff'd 852 F.3d 178, 181 (2d Cir. 2017(quoting Town of Southold, 477 F.3d at 50). Further, nothing about the Idling Law "create[s] a price-floor disadvantage for interstate carriers competing for contracts against local or 'shielded' entities" (Cmpl ¶ 179) and "distorts competition in New York City's passenger transportation market." Cmpl ¶ 177. Plaintiffs are not competing against "public entities." Public entities are just that – public. They accept public funds and serve the public. While Plaintiffs' buses might transport similar populations, they do not serve similar routes and are not in competition. Indeed, Plaintiffs do not identify a circumstance in which they are in competition.

There is also no burden on interstate commerce under the test set forth in Pike v. Bruce Church, 397 U.S. 137 (1970) ("Pike Test"). Under the Pike Test, a "statute enacted for a legitimate public purpose, although apparently evenhanded, actually imposes [1] 'burdens on

---

[7] Since the Idling Law does not discriminate against interstate commerce, there is no need for Defendants "to show that the local benefits of the [Idling L]aw outweigh its discriminatory effects and that the government lacked a nondiscriminatory alternative by which it could protect the local interests." Town of Southold v. Town of E. Hampton, 477 F.3d 38, 47 (2d Cir. 2007); Cmpl ¶¶ 173, 184.

interstate commerce that exceed the burdens on intrastate commerce,' . . . and that [2] those excess burdens on interstate commerce are 'clearly excessive in relation to the putative local benefits.'" Nat'l Shooting Sports Found., Inc. v. James, 144 F.4th 98, 114 (2d Cir. 2025). "For a state statute to run afoul of the Pike standard, the statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." Id. A law will be upheld unless "the incidental burden it imposes on such commerce is clearly excessive in relation to the local benefits." N.Y. Pet Welfare Ass'n v. City of N.Y., 850 F.3d 79, 91 (2d Cir. 2017), cert. denied 583 U.S. 824 (2017). "An incidental burden is one that weighs more heavily on interstate commerce than intrastate commerce." Id.

The Second Circuit has "recognized three instances in which a non-discriminatory state or local regulation may impose a differential burden on interstate commerce." United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth., 438 F.3d 150, 156-7 (2d Cir. 2006), aff'd 550 U.S. 330 (2007). None exist here.[8] The first is where "the regulation has a disparate impact on any non-local commercial entity." United Haulers Ass'n, 438 F.3d at 156. The Complaint does not identify any "non-local commercial entity" impacted by the Idling Law. Cmpl ¶ 180. The second is where "the statute regulates commercial activity that takes place wholly beyond the state's borders." United Haulers Ass'n, 438 F.3d at 156. There is no allegation the Idling Law regulates anything wholly outside of New York. Plaintiffs allege that the Idling Law has created "operational change" such as "reduc[ing] the number of trips to New York City" and "declining certain charters or contracts" or "stopp[ing] NYC operations entirely" Cmpl fn 1. But, in each of these circumstances, the commercial activity does not exist wholly outside of New York; it

[8] The third instance, that a law "imposes a regulatory requirement inconsistent with those of other states" (United Haulers Ass'n, 438 F.3d at 156-7), is not relevant here.

specifically impacts travel into New York City. And although Plaintiffs allege that the Idling Law is part of a scheme to "force private carriers to convert their diesel-powered fleets to electric fleets in order to continue operating in New York" (Cmpl ¶ 78), nothing in the Idling Law requires electrification. Even if it did, that does not violate the dormant Commerce Clause.[9] See, e.g., N.Y. Pet Welfare Assn, 850 F.3d at 91-2 ("The Commerce Clause, however, does not void every law that causes behavior to change in other states. Rather, the measure of extraterritoriality is whether the Sourcing Law 'inescapably require[s]' breeders to operate on the City's terms even when doing business elsewhere….").

Finally if, assuming *arguendo*, the Idling Law did place *any* burden on interstate commerce, any alleged burden is not excessive in relation to the local benefits that the Idling Law provides visitors to and residents of New York City. The environmental and health impacts of vehicle idling cannot be overstated.[10]

## VI. THE FEDERAL PREEMPTION CLAIM (SIXTH CLAIM) FAILS

Preemption analysis begins "with the presumption that Congress did not intend to displace" local law. Wyeth v. Levine, 555 U.S. 555, 565 (2009). A "local government's legislative exercise of historic police powers of the State is not to be superseded by a federal statute unless it

[9] For these same reasons, the Idling Law also does not violate the dormant Commerce Clause by having "the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question." Coal. for Competitive Elec. v. Zibelman, 906 F.3d 41, 57 (2d Cir. 2018) (citations omitted).

[10] The legislative history of the Idling Law noted that "[I]dling vehicles are dangerous to public health, and emissions from idling cause acute and chronic adverse health effects in humans due to the constituents of diesel and non-diesel emissions. See April 23, 2014 Briefing Paper of the Infrastructure Division, *available at* https://legistar.council.nyc.gov/View.ashx?M=F&ID=3048337&GUID=512B1FAA-C842-4355-B663-00A922B297C6 at 9 (last visited Jun. 1, 2026) ("I"); see also Idling Vehicles and Your Health, *available at* https://mountsinaiexposomics.org/idling-vehicles-and-your-health/ (last visited Jun. 1, 2026) ("Pollutants emitted by vehicle tailpipes can enter the body and impact brain, heart, and lung function. They can affect pregnancy outcomes, lower life expectancy, and impact the risk for obesity and diabetes.").

was the clear and manifest purpose of Congress to do so." N.Y. SMSA Ltd. P'ship v. Town of Clarkson, 612 F.3d 97, 104 (2d Cir. 2010)(cleaned up). Plaintiffs cannot overcome the presumption against preemption.

Preemption takes three forms: Congress can enact a statute that expressly preempts state law (express preemption); compliance with both federal and state law is impossible (conflict preemption); or federal regulation in a single field is so pervasive that courts will infer Congress's intent to preempt state law (field preemption). See Arizona v. United States, 567 U.S. 387, 399–400 (2012). "[A]ll [forms of preemption] work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with federal law; and therefore the federal law takes precedence and the state law is preempted." Murphy v. NCAA, 584 U.S. 453, 477 (2018).

**A. There is No Express Preemption**

"Express preemption 'occurs when Congress withdraws specified powers from the States by enacting a statute containing an express preemption provision.'" Travis v. Navient Corp., 460 F. Supp. 3d 269, 279 (E.D.N.Y. 2020)(quoting Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 238 (2d Cir. 2014)). "Preemption is always a matter of congressional intent." Wachovia Bank, N.A. v. Burke, 414 F.3d 305, 314 (2d Cir. 2005)(citing Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152 (1982)). While the text of an express preemption statute contains evidence of Congress's preemptive intent, the presence of such a statute "does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." Buono v. Tyco Fire Prods., LP, 78 F.4th 490, 496 (2d Cir. 2023)(quoting Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008)). In assessing the scope of the displacement, express preemption statutes are to be "narrowly construed." Jackson-Mau v. Walgreen Co., 652 F. Supp. 3d 349, 355 (E.D.N.Y. 2023), aff'd, 115 F.4th 121 (2d Cir. 2024).

The Complaint alleges conflict preemption but fails to allege express preemption. Cmpl ¶¶ 187–209. However, in their response to Defendants' pre-motion letter (ECF 35), Plaintiffs claim that "Defendants' enforcement practices directly interfere with federally regulated interstate passenger transportation under…49 U.S.C. § 14501(c)…." See ECF 35 at 2. While 49 U.S.C. § 1450l(c), is an express preemption clause, it is not mentioned in the Complaint. Nonetheless, section "14501 targets state economic regulation -- i.e., regulation designed to regulate competition -- . . . [and] thus aims to preempt state economic regulation." Omya, Inc. v. Vermont, 33 F. App'x 581, 583 (2d Cir. 2002). Because the Idling Law "does not speak directly to prices, routes, or services of motor carriers," it was not "'the clear and manifest purpose of Congress' in enacting Section 14501" to preempt such a non-economic regulation with limited impact on the routes of motor carriers. Omya, Inc, 33 F. App'x at 584 (quoting Cipollone, 505 U.S. at 516).

**B. There is No Conflict Preemption**

Conflict preemption occurs where "compliance with both federal and state regulations is a physical impossibility," or "the challenged [] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Arizona, 567 U.S. at 399 (cleaned up). A conflict preemption analysis starts with the presumption that Congress did not intend to displace state law. See Wyeth v. Levine, 555 U.S. 555, 565 (2009). This is particularly true, as here, when a local government's police powers are at issue as "a local government's legislative exercise of historic police powers of the State is not to be superseded by a federal statute unless it was the clear and manifest purpose of Congress to do so."[11] N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir. 2010)(cleaned up).

---

[11] Police powers are the general exercise of governmental authority and have "traditionally encompassed 'the authority to provide for the public health, safety, and morals.'" Doe v. Franklin Square Union Free Sch. Dist., 568 F. Supp. 3d 270, 273 (E.D.N.Y. 2021)(quoting Barnes v. Glen Theatre, Inc., 501 U.S. 560, 569 (1991)).

To determine whether a law is conflict-preempted, courts must "examin[e] the federal statute as a whole and identify[] its purposes and intended effects." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000); see also N.Y. Pet Welfare Ass'n, 850 F.3d at 87 (The party claiming preemption "must show that the conflict between the federal and state laws is so direct and positive that the two cannot be reconciled or consistently stand together")(citation omitted). A conflict is not found by a "mere possibility of inconvenience in the exercise of powers, but an immediate constitutional repugnancy that can by implication alienate and extinguish a pre-existing right of [state] sovereignty." Goldstein v. California, 412 U.S. 546, 555 (1973)(alteration in original)(citations omitted).

Plaintiffs do not identify any conflict between local law and federal regulation, instead vaguely alleging that the requirements "may" conflict in "certain operational contexts." Cmpl. ¶¶ 191, 192 (emphasis added). While the Complaint is not precise, Plaintiffs may allege that the driver's responsibility to "complete mandatory inspections," id. ¶ 190, or to maintain "air-actuated service brake systems," id. ¶ 196, conflict with the Idling Law. However, neither of these allegations hold water.

While federal regulations may require drivers to complete mandatory daily inspections, the federal regulations cited by Plaintiffs do not require drivers to idle during the inspection. Most items on the inspection checklist, provided by Plaintiff, do not require idling, including inspection of the interior and exterior of the vehicle, vehicle doors and windows, mirrors, and tires; verification that the fire extinguisher and other emergency equipment is present and in good repair; and inspection of engine components, including oil level. See 49 C.F.R. §§ 396.11, 396.13; Cmpl, Exhibit 4. Additionally, it is unclear why Plaintiffs' drivers would perform their daily pre-drive inspection on City streets. While it may inconvenience Plaintiffs' drivers to turn

their bus engines on and off during daily inspections in order to idle for less time, "the obstacle giving rise to conflict preemption cannot be the 'mere possibility of inconvenience in the exercise of [a state or locality's] powers.'" Goldstein, 412 U.S. at 555. Finally, under 49 C.F.R. § 570.57, properly maintained airbrake systems should not require three minutes to restore the air pressure needed for safe travel. Thus, the relevant federal regulations do not preempt the Idling Law.

## VII. THE MONELL CLAIM (SEVENTH CLAIM) FAILS

To establish a claim under Section 1983 against a municipality, Plaintiffs must show a policy or practice implemented by the municipality that caused their injuries. See Cotto v. City of New York, 803 Fed. Appx. 500, 503 (2d Cir. 2020). Plaintiffs' allegations must either (1) depict either a formal policy endorsed by the municipality, (2) show that a policymaker caused the alleged violation, (3) demonstrate that the practice is so widespread that it constitutes a custom, or (4) allege that the failure of a policy-maker to properly train subordinates to such an extent that it amounts to deliberate indifference. BD v. DeBuono, 130 F. Supp. 2d 401, 438 (S.D.N.Y. 2001). Furthermore, "the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)(citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)). "The custom and policy must be described with factual specificity, rather than bare and conclusory statements." Perez v. Metro. Transp. Auth., 2012 W.L. 1943943, at *4 (S.D.N.Y. May 25, 2012).

"Under Second Circuit case law, a prerequisite to municipal liability under Monell is an underlying constitutional violation by a state actor." Henry-Lee v. City of N.Y., 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). "Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an

independent constitutional violation." Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006). Since Plaintiffs' claims for violations of constitutional rights fail, their claim under Monell must also fail.

## VIII. PLAINTIFFS ARE NOT ENTITLED TO A DECLARATORY JUDGMENT

"The Declaratory Judgment Act ["DJA"] does not expand jurisdiction. Nor does it provide an independent cause of action. Its operation is procedural only -- to provide a form of relief previously unavailable. Therefore, a court may only enter a declaratory judgment [("DJ")] in favor of a party who has a substantive claim of right to such relief." In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726, 731 (2d Cir. 1993). Thus, "Plaintiff has no independent substantive claim of a right to this relief. Therefore, the cause of action for declaratory relief is appropriately dismissed for failure to state a claim." KM Enters. v. McDonald, 2012 W.L. 4472010, at *19 (E.D.N.Y. Sep. 25, 2012)

Further, the Court should decline to exercise jurisdiction. "The [DJA] permits a district court to exercise jurisdiction over a proposed declaratory judgment action when an actual controversy exists. See 28 U.S.C. § 2201(a)." Myers Indus. v. Schoeller Arca Sys., Inc., 171 F. Supp. 3d 107, 121-122 (S.D.N.Y. 2016). Courts have "a broad grant of discretion… to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." Dow Jones & Co. v. Harrods Ltd., 346 F3d 357, 359 (2d Cir. 2003). The Court of Appeals for the Second Circuit has identified six factors that the Court should consider when deciding whether to exercise jurisdiction under the DJA. "No one factor is sufficient, by itself, to mandate that a district court exercise -- or decline to exercise -- its jurisdiction to issue a [DJ]." Cohen Milstein Sellers & Toll PLLC v. Severstal Wheeling, Inc. Ret. Comm., 2026 W.L. 660724, at *3 (S.D.N.Y. Mar. 9, 2026)(citations omitted). The factors relevant here are whether "the [DJ] sought will serve a useful purpose in clarifying or settling the legal issues involved;" whether the DJ "would finalize the

controversy and offer relief from uncertainty;" whether "there is a better or more effective remedy," and whether "judicial efficiency and judicial economy [would] favor declining to exercise jurisdiction." iGem Communications LLC v. MAG DS Corp., 2024 W.L. 5155839, at *2 (S.D.N.Y. Dec. 18, 2024). "Courts frequently find that a [DJ] will not serve a useful purpose when the claim is duplicative of another claim in the same action." MSR Tr. v. Nationstar Mortg. LLC, 2022 W.L. 3441613, at *12 (S.D.N.Y. July 28, 2022).

The Court should decline to exercise jurisdiction over the DJ claim because the DJ claim is duplicative of the First, through Fifth, and Tenth Claims ("Constitutional Claims") and will not offer relief from uncertainty any more than a judgment on the Constitutional Claims.

## IX. PLAINTIFFS ARE NOT ENTITLED TO A PERMANENT INJUNCTION

A party seeking a permanent injunction "must demonstrate (1) actual success on the merits and (2) irreparable harm." Cartier v. Symbolix, Inc., 454 F. Supp. 2d 175, 186 (S.D.N.Y. 2006)(quoting Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003)). "[W]hen an injury is compensable through money damages there is no irreparable harm." Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp., 2014 W.L. 4054240, at *7 (S.D.N.Y. Aug. 15, 2014)(citations and internal quotations omitted). The permanent injunction (Ninth Claim) claim should be dismissed at the outset because a permanent injunction is a remedy and not an independent cause of action. See Spectre Air Capital, LLC v. WWTAI AirOpCo II DAC, 737 F. Supp. 3d 195, 211 (S.D.N.Y. 2024)(Dismissing a cause of action for a permanent injunction because "Plaintiff has not pointed to any authority showing that an injunction is, itself, a cause of action."). Further, as established above, the Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), therefore Plaintiffs have not established actual success on the merits. Further, there is no irreparable injury nor a constitutional violation. Should Plaintiffs successfully challenge an HO decision, penalties paid are returned. Thus, there

is no merit to Plaintiffs allegation that "money lost to unconstitutional fines might never be recoverable." Cmpl ¶ 240. Plaintiffs allegations that they will suffer "ongoing financial harm, operational disruptions, competitive disadvantages, and burdens on interstate commerce operations" (Cmpl ¶ 238) do not make a harm compensable through monetary damages an irreparable injury. While Plaintiffs cannot seek punitive damages against Defendants, Plaintiffs can assign a monetary value to any business loss allegedly caused by the Idling Law because nothing prevents the recovery of compensable damages against a municipality. See Newport v. Fact Concerts, 453 U.S. 247, 269 (1981). Thus, Plaintiffs' permanent injunction cause of action should be dismissed.

## X. THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' ARTICLE 78 CLAIM (ELEVENTH CLAIM)

Plaintiffs' final claim is that under "[CPLR] Article 78 Principles," "Defendants' enforcement practices are arbitrary, capricious, and inconsistent with the principles of administrative fairness." Cmpl ¶ 254. However, "[w]hile there is no binding Second Circuit case on the issue, several courts in this Circuit have expressed doubt regarding whether federal courts may exercise supplemental jurisdiction over Article 78 claims," and therefore this Court should "follow the weight of authority in this District and decline to exercise jurisdiction over" Plaintiffs' Article 78 claim. Komatsu v. City of N.Y., 2021 W.L. 3038498, at *13 (S.D.N.Y. July 16, 2021); see also Brown v. Tomcat Elec. Sec., Inc., 2007 U.S. Dist. LEXIS 63542 , at *3 (E.D.N.Y. Aug. 27, 2007) (E.D.N.Y. Aug. 27, 2007)("New York law vests jurisdiction over Article 78 proceedings solely in the state courts…"); Lawtone-Bowles v. City of N.Y., 2021 W.L. 3773641 at *3 (S.D.N.Y. Aug. 23, 2021)("State law vests jurisdiction over Article 78 proceedings exclusively in New York Supreme Court.").

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss the Complaint and dismiss the Complaint in its entirety.

Dated: New York, New York
August 19, 2026

STEVEN BANKS
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2212
gzilkha@law.nyc.gov

By: ______________________________
Genan F. Zilkha
Isabella Kendrick
*Assistant Corporation Counsels*

**WORD COUNT CERTIFICATION**

According to Microsoft Word, the portions of this memorandum of law that must be included in a word count, pursuant to Local Civil Rule 7.1 and the Part's Individual Practices in Civil Cases, contain 7,994 words (including footnotes), exclusive of cover page, table of contents, table of authorities, signature block, and this certification

Dated: New York, New York
August 19, 2026

STEVEN BANKS
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2212
gzilkha@law.nyc.gov

By: ______________________________
Genan F. Zilkha
Isabella Kendrick
*Assistant Corporation Counsels*
Assistant Corporation Counsels